IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ANGELO ACOSTA, | CASE NO. 3:24-CV-00201-JJH |
| Petitioner, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN BRYANT PALMER, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

Representing himself, Petitioner Angelo Acosta, a prisoner in state custody, applied for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1; ECF #1-2). The District Court has jurisdiction under § 2254(a) and the matter is referred to me to prepare a Report and Recommendation. (Non-document entry of May 16, 2024). On June 26, 2024, I granted Mr. Acosta's motion to dismiss the part of his petition related to state court Case Number CR 2019-2703, so I only address the petition as it pertains to the conviction in Case Number CR 2019-2038. (ECF #12).

On August 28, 2024, Respondent Bryant Palmer, as Warden of the Ohio State Penitentiary (hereinafter, the State), filed the Return of Writ. (ECF #14). On September 12, 2024, I granted Mr. Acosta's motion to expand the state-court record with a transcript of proceedings held September 3, 2019. (ECF #16). The State supplemented the record as ordered on October 3, 2024. (ECF #18 and 19). On October 17, 2024, Mr. Acosta submitted his Traverse. (ECF #20).

The State filed a sur-reply on November 1, 2024. (ECF #21). Mr. Acosta's petition is now decisional.

For the reasons that follow, I recommend the District Court **DISMISS** the petition as untimely. Even if the petition were timely, all grounds for relief are procedurally defaulted and meritless. I further recommend the District Court **DENY** Mr. Acosta a certificate of appealability (COA) on all grounds.

PROCEDURAL HISTORY

A.    **State court factual findings in Case Number CR 2019-2038**

The Ohio Court of Appeals, Sixth Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Acosta rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Sixth District determined:

> {¶1} This consolidated case is before us on an appeal brought by defendant-appellant, Angelo Acosta, from the February 24 and March 30, 2020 judgments of the Lucas County Court of Common Pleas which, following his guilty pleas to multiple counts of drug trafficking, sentenced him to a total minimum of 11 years of imprisonment. For the reasons set forth below, we affirm.

> {¶2} Following the May 10, 2019 search of appellant's residence, appellant was indicted in case No. CR0201902038, on two counts, trafficking and possession of cocaine. Following testing on the seized items, appellant was indicted in case No. CR0201902703, on five additional counts, trafficking, possession, and illegal manufacture of drugs.

> {¶3} Appellant originally entered pleas in both cases on January 27, 2020; sentencing was set for January 31, 2020. After multiple continuances, on February 14, 2020, the parties discussed appellant's wish to withdraw his plea because due to medication he was taking he was not clear-headed. The judge ultimately permitted that the original pleas be withdrawn and appellant again entered guilty pleas in both cases.

> {¶4} In CR0201902038, appellant entered a guilty plea to one count of trafficking in cocaine, a second-degree felony; the remaining charge was dismissed. Prior to accepting appellant's plea, appellant was presented with additional forms explaining

2

the ramifications of R.C. 2967.271, the Reagan Tokes law, which provides for a minimum prison sentence imposed to be the "presumed" release date subject to the Ohio Department of Corrections' (ODRC) ability to rebut the presumption and extend the term based on a defendant's noncompliance with institutional rules and recommended programs. Appellant, after consulting with his attorney and signing the acknowledgement forms, indicated that he understood. No objections were made as to the constitutionality of the statute. Appellant was immediately sentenced to a minimum of six years of imprisonment.

(ECF #14-1 at PageID 332-33 (footnote omitted); *see also State v. Acosta*, Nos. L-20-1068 and

L-20-1069, 2021 WL 945084, at *1 (Ohio Ct. App. Mar. 12, 2021)).

**B.     Direct appeal**

On March 26, 2020, through counsel, Mr. Acosta timely appealed his conviction to the

Sixth District. (ECF #14-1 at PageID 250-53, 265). There, he raised two assignments of error:

1.     The Reagan Tokes Act is unconstitutional; and

2.     The trial court failed to comply with the directives of Ohio Revised Code §§ 2929.11 and 2929.12.

(*See id.* at PageID 272). On March 12, 2021, the Sixth District affirmed. (*See id.* at PageID 339).

Mr. Acosta did not pursue an appeal to the Supreme Court of Ohio.

**C.     Delayed application to reopen direct appeal and motion to vacate sentences**

On September 12, 2022, representing himself, Mr. Acosta sought permission to file a

delayed application to reopen his direct appeal under Ohio Appellate Rule 26(B). (ECF #14-1 at

PageID 887). He argued his appellate counsel was ineffective for not raising four issues on appeal:

1.     The State of Ohio indicted Appellant on June 14th, 2019 without probable cause, and appellant's indictment is void;

2.     Appellant's constitutional right to a speedy trial guaranteed by the Sixth and Fourteenth Amendment was violated;

3.     The trial court failed to state the full maximum of the sentence and length of post-release control; and

4.     Ineffective assistance of trial counsel.

3

(*Id.* at PageID 888-96). On November 28, 2022, the Sixth District denied Mr. Acosta's application, concluding it was untimely and Mr. Acosta had not shown good cause for the delay. (*Id.* at PageID 1064-66).

On December 15, 2022, Mr. Acosta sought permission to file a delayed motion for reconsideration under Ohio Appellate Rule 26(A). (ECF #14-1 at PageID 1067). On March 13, 2023, the Sixth District denied permission because Mr. Acosta did not include his motion for reconsideration with his request. (*Id.* at PageID 1070). On March 29, 2023, Mr. Acosta again sought permission to file a delayed motion for reconsideration and included the substantive motion for reconsideration with it. (*Id.* at PageID 1071-79). On May 4, 2023, the Sixth District denied reconsideration. (*Id.* at PageID 1093-94).

On July 6, 2023, representing himself, Mr. Acosta filed a motion to vacate his sentence and withdraw his February 14, 2020 guilty pleas. (ECF #14-1 at PageID 1095). But he withdrew the motion on July 20, 2023. (*Id.* at PageID 1118).

**D.     Post-conviction petition**

On August 4, 2023, representing himself, Mr. Acosta filed a delayed petition for post-conviction relief. (ECF #14-2 at PageID 1128). There, he raised four claims:

1.    Petitioner was charged without probable cause to both Case No. CR-19-2038 and CR-19-2703 being that both indictments arose from the same set of facts violating the Fourth Amendment to the U.S. Constitution;

2.    Petitioner was unavoidably prevented from discovery because his trial counsel was ineffective for failing to demand discovery and for withholding evidence;

3.    Petitioner's due process that is guaranteed under the Fifth and Fourteenth Amendment is violated when the State of Ohio failed to disclose favorable material evidence, depriving Petitioner of the fair trial the Sixth Amendment guarantees; and

4.    Ineffective assistance of trial counsel.

4

(*See id.* at PageID 1133, 1138-42, 1143, 1149). On May 15, 2024, the trial court denied the petition. (*Id.* at PageID 1290). The court concluded Mr. Acosta's petition was untimely (*id.* at PageID 1298) and alternatively without merit because only his ineffective-assistance claim attacked whether he knowingly or voluntarily entered his plea and Mr. Acosta did not show he was prejudiced by the alleged ineffective assistance (*id.* at PageID 1295-97).

FEDERAL HABEAS PETITION

Mr. Acosta raises five grounds for relief:

**GROUND ONE:** Insufficient evidence violating the Fifth and Fourteenth Amendment to the U.S. Constitution. Miscarriage of justice.

**Supporting facts:** Petitioner was charged without facts or evidence and the charges were insufficient to charge petitioner and convict.

**GROUND TWO:** Petitioner was deprived of his right to due process and a fair trial guaranteed by the Sixth & Fourteenth Amendments to the U.S. Constitution. The prosecutor failed to disclose favorable evidence.

**Supporting facts:** Petitioner had no way to make a defense being that there were no facts that charged Petitioner. The State of Ohio could not disclose evidence that charged petitioner because there was not any.

**GROUND THREE:** Petitioner was unavoidably prevented from discovery and no factfinder would have found Petitioner guilty.[1]

**Supporting facts:** Petitioner had no way to discover the facts of a lab report and because there were no facts, no jury would have convicted Petitioner.

**GROUND FOUR:** Petitioner's Sixth Amendment U.S. Constitution right to confrontation was violated and Petitioner was denied the effective assistance of counsel guaranteed by the Sixth Amendment.

**Supporting facts:** Petitioner had no way to confront the adverse witness of lab analyst when no lab analyst confirmed an offense.

---

[1] In his memorandum accompanying his petition, Mr. Acosta splits Ground Three into two separate grounds. (*See* ECF #1-2 at PageID 32, 38). For organizational clarity, I follow the petition and group them together.

5

**GROUND FIVE:** Petitioner was deprived the effective assistance of counsel when she failed to make any kind of defense for Petitioner.[2]

(ECF #1 at PageID 5, 7, 8, 10) (cleaned up).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Acosta's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

---

[2]    Mr. Acosta did not include separate supporting facts for Ground Five in his petition but does discuss them in his accompanying memorandum. (ECF #1-2 at PageID 47-50).

6

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not

unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers, including the statute of limitations, exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal habeas review is limited to federal claims that a state court decided on the merits. Claims

that were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not reviewable by a federal habeas court. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**One-year statute of limitations**.  A habeas petition must be timely to be considered. AEDPA establishes a one-year statute of limitations on applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d). AEDPA's statute of limitations period runs from the latest of four dates:

(A)  The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, under 28 U.S.C. § 2244(d)(2), the one-year limitations period is paused (*i.e.*, tolled) while a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending.

**State-law Claims Not Cognizable on Federal Habeas Review**. Federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put another way, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th

Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal habeas court "does not function as another state appellate court to review a state court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief by simply asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

**Procedural Default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There

10

are two avenues by which a petitioner may procedurally default a claim. *Williams*, 460 F.3d at 806. One way a procedural default occurs is if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether that failure bars review of a habeas claim, courts in the Sixth Circuit ask four questions: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can bar review of the federal constitutional claim; and (4) whether the petitioner can show cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The other way a claim can be procedurally defaulted is if a petitioner does not raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To have a habeas claim considered on the merits, a petitioner must present that federal claim at "each and every level" of the state courts. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003). If a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

**Excusing a Procedural Default.** A procedural default is not the end of a habeas claim. A petitioner can overcome a procedural bar by showing either (1) cause for the default and actual prejudice because of the alleged violation of federal law or (2) not considering the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749. Success here does not entitle

11

a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim (subject to the standard of review above) when the claim would otherwise be procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any ignorance of the law and procedural filing requirements are enough to show cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice. *Murray*, 477 U.S. at 494. Rather, the petitioner must show the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Id*. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

**Actual Innocence Exception.**  Alternatively, a petitioner may overcome procedural bar through a convincing claim of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). By such a showing, a petitioner can overcome the expiration of the statute of limitations, *see id.*, and a procedural default. *See Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Sixth Circuit recently summarized,

12

> This means that a petitioner may not pass through the equitable gateway by simply
> undermining the state's case. Rather, he must demonstrate that he *factually* did not
> commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the
> petitioner because it leaves a vacuum to be filled by an exonerative explanation; but
> it is not sufficient in and of itself.

*Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) (emphasis in original), *cert. denied*,

No. 24-6180, 2025 WL 581742 (Feb. 24, 2025). A valid actual innocence claim must be supported

by new, reliable evidence that was not presented at trial and is "so strong a court cannot have

confidence in the outcome of the petitioner's trial." *Schlup*, 513 U.S. at 324. Such evidence can

include exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence. *Id.* But this evidence must show that, "more likely than not[,] any reasonable juror would

have reasonable doubt." *House*, 547 U.S. at 538.

ANALYSIS

**A.** **Mr. Acosta's petition is untimely, and he does not demonstrate his actual innocence to excuse the time bar.**

The State argues Mr. Acosta's 2024 petition is untimely because his conviction became

final on April 26, 2021 and thus the one-year limitations period lapsed in 2022. (*See* ECF #14 at

PageID 159). Mr. Acosta argues any untimeliness should be overlooked because he is actually

innocent. (ECF #20 at PageID 1531-32).

**1.** **Mr. Acosta's petition is untimely.**

As discussed above, AEDPA's limitations period runs from the latest of four dates, the

latest here being the date Mr. Acosta's conviction "became final by the conclusion of direct review

or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A state-court

judgment becomes "final" on direct review for purposes of § 2241(d)(1)(A) when the time for

13

pursuing direct review in state court or the United States Supreme Court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

The Sixth District affirmed Mr. Acosta's conviction on March 12, 2021. (ECF #14-1 at PageID 339; *see also Acosta*, 2021 WL 945084). Mr. Acosta did not seek further review from the Supreme Court of Ohio, so his conviction became final when the 45-day window to appeal to that court closed. *See* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a). Thus, his conviction became final on April 27, 2021, 45 days after March 13, 2021. *See* Ohio Sup. Ct. Prac. R. 3.03(A)(1) ("In computing any period of time . . . the day of the act from which the designated period of time begins to run shall not be included"). AEDPA's one-year statute of limitations thus began to run the next day, April 28, 2021 *see* Fed. R. Civ. P. 6(a)(1) ("[I]n computing any time period . . . exclude the day of the event that triggers the period."), and so the petition was due April 28, 2022. Mr. Acosta's petition was filed on January 26, 2024. (*See* ECF #15 at PageID 15); *see also Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding a pro se petitioner files a federal habeas petition the day it is tendered to the prison mailing system). Absent tolling, his petition is 638 days late.

Mr. Acosta is not entitled to any statutory tolling. Under 28 U.S.C. § 2244(d)(2), the one-year limitations period is paused while a properly filed application for state post-conviction relief or other collateral review remains pending. But statutory tolling can only pause the one-year limitations period, it cannot restart an already expired period. *Eberle v. Warden, Mansfield Corr. Inst.*, 523 F.App'x 605 (6th Cir. 2013). While Mr. Acosta's application to reopen, motion to vacate sentence, and post-conviction petition would ordinarily toll the statute of limitations, they were each filed *after* the limitations period had expired on April 28, 2022. (*See* ECF #14-1 at PageID

14

887, 1095; ECF #14-2 at PageID 1128). Thus, Mr. Acosta is not entitled to statutory tolling and his habeas petition remains 638 days late.

2.   **Mr. Acosta's attacks on the legal sufficiency of the indictment or the admissibility of the laboratory report does not demonstrate his actual innocence of trafficking in cocaine.**

Mr. Acosta argues that AEDPA's one-year limitations period does not apply because he can demonstrate his actual innocence. (ECF # 20 at PageID 1533) ("Petitioner relies on innocence in his petition to excuse the statute of limitations"). This argument is first complicated by his decision to plead guilty to the charges for which he now asserts his innocence. "Though the result often seems counterintuitive, a defendant that pled guilty still may assert [an actual-innocence] claim." *See Eads v. Bottom*, No. 6:13-CV-29, 2014 WL 2742581, at *5 (E.D. Ky. June 12, 2014) (citations omitted). But such a case "creates a host of analytical difficulties, given that there is no jury (or factfinder) finding, the record is normally abbreviated, the state did not 'present' evidence in a fashion designed to establish guilt beyond a reasonable doubt, and the petitioner typically has confirmed his guilt through the solemnity of a plea colloquy." *Id.* (collecting cases).[3]

The question is whether Mr. Acosta is actually innocent of trafficking in cocaine as defined by Ohio law. The court looks not just at the facts to which Mr. Acosta admitted when he pled

---

[3]   I note that while not at issue for Mr. Acosta's conviction in CR 2019-2038, for Case No. CR 2019-2703, the State dismissed several charges in exchange for his plea. In cases where the State has dismissed more or equally serious charges during plea bargaining, a petitioner must demonstrate his actual innocence of those charges as well. *See Bousley*, 523 U.S. at 624 (more serious charges); *Witham v. United States*, 97 F.4th 1027, 1034 (6th Cir. 2024) (equally serious charges), *cert. denied*, No. 24-5494, 2025 WL 889189 (Mar. 24, 2025). Thus, if Mr. Acosta seeks to establish his actual innocence in that case, he must establish his factual innocence not only of the second- and fourth-degree felonies to which he pled guilty, but also the more or equally serious felonies in counts 2, 4, 7, and 8. (*See* ECF #14-3 at PageID 1442; ECF #14-1 at PageID 225-30, 236-37).

15

guilty, but also other evidence the State provided concerning Mr. Acosta's guilt even if that evidence was not offered during his plea colloquy. *See Waucaush v. United States*, 380 F.3d 251, 254-55 (6th Cir. 2004). The statute of limitations may be excused if "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial" shows that, "more likely than not[,] any reasonable juror would have reasonable doubt" that Mr. Acosta trafficked cocaine. *See House*, 547 U.S. at 538 (cleaned up).

Mr. Acosta argues "[t]he State of Ohio brought a controlled substances offense of cocaine against Petitioner, when no laboratory report confirmed an offense or a controlled substance. (Petitioner is innocent because of this.)" (ECF #1-2 at PageID 51) (parentheses in original). Construing Mr. Acosta's extensive pro se filings liberally, two lines of argument appear. The first argument is that Mr. Acosta could not have committed a crime because Ohio law requires a laboratory report before seeking an indictment for a drug offense and because there was no laboratory report at the time of indictment, there was no crime. (*See* ECF #1-2 at PageID 24-25, 27-28, 41, 44-45, 51; ECF #20 at PageID 1532-34, 1537, 1540, 1543). The second argument is that the laboratory report would have been inadmissible under Ohio's criminal discovery rules had Mr. Acosta gone to trial and, without the report, no reasonable jury could convict him. (*See* ECF #1-2 at PageID 43-45, 54; ECF #20 at PageID 1534, 1538-39, 1540-41). Neither argument demonstrates his factual innocence of cocaine trafficking.

To the first argument, Mr. Acosta's challenge to the legal sufficiency of the indictment against him is not an assertion of factual innocence. *See Searles v. Baldauf*, No. 3:23-cv-02394-CEF, 2025 WL 460909, at *9 (N.D. Ohio Feb. 11, 2025), *report and recommendation adopted*, 2025 WL

951097 (N.D. Ohio Mar. 31, 2025); *see also Rizk v. United States*, No. 22-3834, 2023 WL 5275505, at *3 (6th Cir. Feb. 27, 2023) ("[petitioner] cannot establish actual innocence by demonstrating mere defects in the indictment"). Thus, even if Mr. Acosta's indictment were faulty because the grand jury did not have scientific evidence identifying the substances seized from his home as cocaine, this does not constitute actual innocence to support excusing Mr. Acosta's untimely petition.

To the second argument, even if the laboratory report would have been inadmissible had he proceeded to trial, the Supreme Court requires federal habeas courts reviewing actual-innocence claims to look at all the evidence "without regard to whether it would necessarily be admitted under rules of admissibility." *House*, 547 U.S. at 538; *Schlup*, 513 U.S. at 327 ("[T]he district court is not bound by the rules of admissibility that would govern at trial"). Considering the report without regard to its admissibility as *Schlup* requires, that report confirmed the substances seized from Mr. Acosta were cocaine. (ECF #1-9 at PageID 110). It does not exculpate Mr. Acosta. Thus, Mr. Acosta's second argument does not constitute actual innocence to support excusing Mr. Acosta's untimely petition.

My own review of the record also does not support Mr. Acosta's innocence of cocaine trafficking. Mr. Acosta stated in two separate plea colloquies that he trafficked cocaine. (ECF #14-3 at PageID 1446-49, 1456; ECF #14-4 at PageID 1478-79, 1491). These statements carry "a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Moreover, despite everything said about the laboratory report, Mr. Acosta never claims the report was wrong. Nor does Mr. Acosta offer any exonerative explanation that he factually did not traffic cocaine, which is the basis

for a successful actual-innocence claim. *See Hubbard*, 98 F.4th at 743. Thus, I cannot conclude a reasonable juror would have reasonable doubt that Mr. Acosta trafficked cocaine.

I also note Mr. Acosta makes various arguments that his attorney was ineffective in not investigating his case, not attacking the indictment, withholding the laboratory report from him, and allowing him to plead guilty when he would have won at trial. (ECF #1-2 at PageID 27-28, 33-38, 47-50, 58-59; ECF #20 at PageID 1535-36, 1538-39, 1544, 1550-51, 1575-79). To the extent he relies on them here, claims of ineffective assistance of counsel cannot support a claim of actual innocence. *Linder v. Haviland*, No. 1:14-CV-1489, 2016 WL 11737762, at *8 (N.D. Ohio May 31, 2016), *report and recommendation adopted*, 2016 WL 7664734 (N.D. Ohio Dec. 15, 2016).

Because Mr. Acosta's petition is untimely and he does not demonstrate his actual innocence, I recommend the District Court **DISMISS** the petition as untimely.

**B.    Even if his petition were timely, Mr. Acosta's claims are procedurally defaulted.**

The State argues Mr. Acosta procedurally defaulted his grounds for relief because he did not first present them to Ohio's courts. (ECF #15 at PageID 166-67). In the supporting memorandum to his petition, Mr. Acosta admits he did not exhaust his state-court remedies. (ECF #1-2 at PageID 50). Because Mr. Acosta admits he did not raise his federal habeas claims in state court, his claims are procedurally defaulted. *Williams*, 460 F.3d at 806.

As he explains in his Traverse, "Petitioner admitted in his petition that he did not exhaust his state court remedies first. Petitioner is taking his chances in this court because petitioner believes he can show a fundamental miscarriage of justice and a violation of the right to due process in violation of the United States Constitution." (ECF #20 at PageID 1547-48). As stated above, a petitioner can avoid a procedural default by showing that not considering the claims will result in a fundamental miscarriage of justice by the conviction of a person who is actually

innocent. *See Coleman*, 501 U.S. at 749; *Schlup*, 513 U.S. 298; *House*, 547 U.S. 518. As analyzed above, Mr. Acosta has not shown he is actually innocent of trafficking cocaine and so he cannot show a fundamental miscarriage of justice would occur if his procedural default were not excused. Thus, even if his petition were timely, his claims are procedurally defaulted. But, if Mr. Acosta could demonstrate he was actually innocent to excuse the time bar, that would also excuse his procedural default.

**C.    Even if Mr. Acosta could demonstrate his actual innocence, all of his grounds for relief lack merit.**

Even if Mr. Acosta demonstrated his actual innocence and thereby excuse both untimeliness and procedural default, that showing alone does not entitle him to habeas relief. *See Wright v. Stegall*, 247 F.App'x 709, 711 (6th Cir. 2007) (noting the Supreme Court twice declined to recognize a freestanding actual-innocence claim in habeas corpus). Rather, the actual-innocence exception only allows the court to review the merits of his grounds for relief. *See McQuiggin*, 569 U.S. at 386. In the event the District Court concludes Mr. Acosta has demonstrated his actual innocence, I recommend the District Court **DENY** all five grounds as without merit.

**1.    Ground One lacks merit because Mr. Acosta waived any challenge to the validity of the indictment by pleading guilty.**

In Ground One, Mr. Acosta argues the indictment against him was not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendment because the laboratory report identifying the cocaine was not completed when the indictment issued. (ECF #1-2 at PageID 24-25; ECF #20 at PageID 1564-67). But by pleading guilty, Mr. Acosta waived all "claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). This waiver included "the right to contest the factual merits of the charges against him." *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

The Sixth Circuit has, though in an unpublished case, applied this rule to specifically reject a petitioner's argument that insufficient evidence was presented to the grand jury. *See Covert v. O'Dea*, No. 97-3261, 178 F.3d 1293, at *2 (6th Cir. Feb. 9, 1999) (table). Mr. Acosta notes his guilty plea waives his evidentiary claim multiple times. (ECF #20 at PageID 1565, 1567; *see also* ECF #14-1 at PageID 221). Even without the waiver, the Fifth Amendment's guarantee of an indictment by grand jury in federal prosecutions does not, through the Fourteenth Amendment, apply to state prosecutions. *See Williams v. Haviliand*, 467 U.S. F.3d 527, 513 (6th Cir. 2006) (citing *Branzburg v. Hayes*, 408 U.S.665, 687-88 n.25 (1972)). Thus, Mr. Acosta has no federal constitutional right to challenge the evidence the grand jury considered when it indicted him.

**2.    Ground Two lacks merit because Mr. Acosta's guilty plea waived any challenge to pre-trial discovery violations.**

In Ground Two, Mr. Acosta asserts he was denied due process under the Fourteenth Amendment and the right to present a defense because the State did not provide the laboratory report until three months after his discovery demand (ECF #1-2 at PageID 29-30) and the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), because the report was favorable to him (ECF #20 at PageID 1567-68). He also repeats his arguments from Ground One. (ECF #1-2 at PageID 31-32; ECF #20 at PageID 1571-72). But "[a]ny alleged pre-trial discovery violation is barred by Petitioner's guilty plea." *Atkinson v. Forshey*, No. 2:21-cv-5316, 2024 WL 476307, at *12 (S.D. Ohio Jan. 10, 2024) (citing *Calvey v. Burt*, No. 17-1926, 2018 WL 2015779, at *4 (6th Cir. Apr. 30, 2018)), *report and recommendation adopted*, 2024 WL 475263 (S.D. Ohio Feb. 7, 2024).

Even without the waiver, the Supreme Court has consistently held that "[t]here is no general constitutional right to discovery in a criminal case[.]" *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). Rather, "all the Constitution requires, per the due process clause, is that the

defendant not be deprived of a fundamentally fair *trial*." *Id.* (emphasis added). Mr. Acosta did not

go to trial, so his due-process right to a fair trial did not attach. Similarly, *Brady* requires the

prosecution "[e]nsure that 'criminal *trials* are fair' by disclosing evidence favorable to the defendant

upon request[.]" 373 U.S. at 83 (emphasis added). In *United States v. Ruiz,* 536 U.S. 622 (2002), the

Supreme Court considered whether *Brady* required federal prosecutors to disclose "impeachment

information relating to any informants or other witnesses" before entering into a plea agreement.

*Id.* at 625. It held the Constitution does not require that disclosure. *Id.* But the Supreme Court

did not have the occasion to determine whether that requirement extended to *exculpatory evidence*

because Mr. Ruiz's plea agreement specified the government would disclose that evidence. *See id.,*

536 U.S. at 631.

Whether the *Ruiz* holding extends to exculpatory material remains an open question.

Within the Sixth Circuit, courts interpreting *Ruiz* have reached opposing conclusions. Some courts

have determined the *Ruiz* decision itself suggests the holding extends to exculpatory as well as

impeachment evidence, pointing to the Court's reasoning that *Brady* is grounded in a defendant's

due process right to receive a fair trial. *See McClellan v. Rapelje,* No. 2:09-cv-10617, 2010 WL

5294366, at *12 (E.D. Mich. Nov. 15, 2010); *Byrd v. Scutt,* No. 10-11823, 2013 WL 5348703, at *9

(E.D. Mich. Sept. 24, 2013) ("the Supreme Court in *Ruiz* emphasized the *Brady* rule's connection

to the truth-finding function of a trial as the rationale behind their decision, which suggested that

the holding in *Ruiz* extends to exculpatory substantive evidence as well"). Another court

determined the holding in *Ruiz* does not foreclose the possibility of a *Brady* violation where a

prosecutor does not disclose exculpatory information before the defendant pleads guilty. *See*

*Ransaw v. Lucas,* No. 1:09-cv-02332, 2013 WL 6179418, at *8 (N.D. Ohio Nov. 25, 2013). Other

21

courts acknowledge the opposing arguments but do not decide the issue. *See Prince v. Cook*, No. 3:13-cv-01051, 2014 WL 4956455, at *26-27 (N.D. Ohio Sept. 30, 2014).

Even if Mr. Ruiz's petition were timely, the Court need not determine whether the State must disclose exculpatory material before entering into a plea agreement with Mr. Acosta. Even if there is such a right, it is impossible to find a discovery violation here, let alone one that entitles Mr. Acosta to habeas relief. "*Brady* does not apply when the defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information.'" *Owens v. Guida*, 549 F.3d 399, 417 (6th Cir. 2008) (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998)). Mr. Acosta knew the State had not completed the final testing of the substances seized from his house before the indictment because the State said as much on September 3, 2019. (*See* ECF #19-1 at PageID 1523) ("[I]t is the State's understanding that the laboratory testing on these matters is—it is supposed to be completed next week"). Thus, Mr. Acosta did not need to read the final report to know it was not complete before the indictment, giving him the essential facts of his arguments here. Moreover, the State provided the report to Mr. Acosta's counsel on September 25, 2019 (the same day it was produced), which was months before his first plea on January 27, 2019. (ECF #1-5 at PageID 105; ECF #1-9 at PageID 110-11). Mr. Acosta, through counsel, had the information in the report before his plea because he cited concerns about the drug testing in his second plea colloquy as a basis for withdrawing his first plea. (*See* ECF 14-4 at PageID 1469). Thus, even if *Brady* required disclosure of the laboratory report, its requirements would have been met because Mr. Acosta had the essential information to raise his issue with the timing of the laboratory testing and had the final laboratory report before he entered his first guilty plea.

### 3. Ground Three is not a claim for federal habeas relief.

In Ground Three, Mr. Acosta argues he "was unavoidably prevented from discovery and no factfinder would have found Petitioner guilty." (ECF #1 at PageID 8; *see also* ECF #20 at PageID 1572). He appears to be citing the standard for an Ohio court to consider an untimely petition for postconviction relief. Ohio's postconviction-relief statute permits a late filing if "the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim to relief" and "the petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty." *See* Ohio Rev. Code § 2953.23(A)(1). Mr. Acosta goes through this standard in his memorandum accompanying his petition.[4] (ECF #1-2 at PageID 33-42).

On its face, this does not state a claim upon which habeas corpus relief can be granted. Whether a habeas petitioner can meet the requirements for an Ohio state court to hear a late post-conviction petition under Ohio law is not a "violation of the Constitution or law or treaties of the United States." *See* 28 U.S.C. § 2254(a). As stated above, Mr. Acosta's claims regarding pre-plea discovery are without merit. And, outside of death-penalty cases, the Supreme Court has not recognized a freestanding claim for actual innocence in habeas corpus. *See Wright v. Stegall*, 247 F.App'x 709, 711 (6th Cir. 2007) (analyzing *Hererra v. Collins*, 506 U.S. 390 (1993) and *House*, 547 U.S. 518). Even if there were a freestanding innocence claim, as explained above, it fails here.

---

[4]     Mr. Acosta also argues his trial counsel was ineffective in defending him in Case No. CR 2019-2703, but, as per Mr. Acosta's motion, I do not consider any arguments relating to that case. (*See* ECF #12).

4. **Ground Four lacks merit because the Confrontation Clause does not apply when there is no trial and Mr. Acosta, by pleading guilty, waived any claim that his attorney was ineffective prior to entering his guilty plea.**

In Ground Four, Mr. Acosta argues he was denied his right to confront the forensic scientist who authored the laboratory report. (ECF #1-2 at PageID 45). The Confrontation Clause provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. When Mr. Acosta pled guilty, he gave up his rights to a trial and to confront his accusers (ECF #14-1 at PageID 221), including confronting the forensic scientist that authored the laboratory report. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) ("By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including . . . the right to confront one's accusers.").

Absent the waiver, Mr. Acosta has not explained how the Confrontation Clause was violated. The right to confront one's accuser "is a *trial* right," meaning that it applies *at trial*. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality opinion) (emphasis in original); *see also Kentucky v. Stincer*, 482 U.S. 730, 738 n.9 (1987) (collecting cases). Mr. Acosta did not go to trial, so his Confrontation Clause right did not attach. To the extent he argues he had a right to confront the forensic scientist through pre-trial discovery, the right to confront one's accuser is not "a constitutionally compelled rule of pretrial discovery." *Ritchie*, 480 U.S. at 52 (plurality opinion); *Fenenbock v. Dir. of Corr. for California*, 692 F.3d 910, 916 n.5 (9th Cir. 2012).

5. **Ground Five lacks merit because Mr. Acosta by pleading guilty waived any claims concerning pre-plea ineffective assistance of counsel.**

In Ground Five, Mr. Acosta argues his retained trial counsel was ineffective for not raising a Fourth Amendment issue, not seeking dismissal of the indictment or objecting on the basis of the late laboratory report, withholding the laboratory report from him, and allowing him to plead

guilty. (ECF #1-2 at PageID 48-50; ECF #20 at PageID 1575-76). But by pleading guilty, Mr. Acosta waived all "claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. The Sixth Circuit has applied this rule to reject pre-plea claims of ineffective assistance of counsel that do not attack the voluntary or intelligent nature of the plea. *United States v. Stiger*, 20 F.App'x 307, 308 (6th Cir. 2001). The errors Mr. Acosta complains of all relate to pre-plea conduct. (*See* ECF #1-2 at PageID 48-50; ECF #20 at PageID 1575-76). Though Mr. Acosta asserts his guilty plea was not voluntary and intelligently made because of the ineffective assistance, his claims all relate to actions taken or not taken in the leadup to his guilty plea. (*See* ECF #1-2 at PageID 48-50). These relate solely to pre-plea conduct and are barred. Moreover, his claims are undermined by his multiple statements on the record that he was satisfied with his attorney's performance at the time of both pleas. (*See* ECF #14-3 at PageID 1446-47; ECF #14-4 at PageID 1467; *see also* ECF #14-1 at PageID 221).

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Acosta has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are time barred, procedurally defaulted, or non-meritorious federal constitutional claims. I thus recommend the District Court **DENY** Mr. Acosta a COA for all grounds of his petition.

### CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** the petition as untimely. I further recommend the District Court **DENY** Mr. Acosta a certificate of appealability on all grounds.

Dated: April 28, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or**

26

whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).